IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DONALD HAYWOOD,**<br><br>　　　　　　　　**Plaintiff,**<br><br>v.<br><br>**ANTHONY B. JONES,<br>JOSHUAA SCHOENBECK, and<br>WALKER,**<br><br>　　　　　　　　**Defendants.** | **Case No. 22-cv-01219-SPM** |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This case was severed from *Haywood v. Wexford Health Sources Inc., et al.*, No. 22-cv-01007-NJR, on June 9, 2022. (Doc. 1). It contains and is limited to Haywood's allegations regarding his disciplinary hearing that resulted in his placement in segregation. The claim was designated as Count 2 in the original case and described as a Fourteenth Amendment due process claim against Anthony Jones, Joshua Schoenbeck, and Ms. Walker for denying Haywood access to mental health and proper notice regarding his disciplinary hearing. As Haywood was advised, this claim is subject to preliminary review pursuant to 28 U.S.C. § 1915A. (*See* Doc. 12). Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### COMPLAINT – DUE PROCESS ALLEGATIONS

In the Complaint, Haywood alleges that on September 9, 2021, while housed at Pontiac Correctional Center, he was issued two disciplinary tickets regarding his involvement in a staff assault. (Doc. 2, p. 19, 23, 54-55, 68). That same day, he was transferred to Menard Correctional

Center ("Menard"). (*Id.* at p. 59). On September 22, 2021, he was again transferred to Cook County Jail on a court writ. (*Id.* at p. 20). He returned to Menard on February 11, 2022. (*Id.* at p. 21). Prior to his transfer he was not given a hearing on the disciplinary tickets. At some point Haywood was given a hearing in front of the Adjustment Committee composed of Defendants Walker, Jones, and Schoenbeck. (*Id.* at p. 23). Haywood was found guilty of the charged offenses and punished with six months in segregation.

### DISCUSSION

Based on a review of the Complaint, this Court redesignates Count 2 as follows:

**Count 1:** Fourteenth Amendment Due process claim against Jones, Schoenbeck, and Walker for disciplining Haywood with six months in segregation without due process.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under the Twombly[1] pleading standard.**

Haywood claims that Defendants held the hearing "know[ing] that due process is violated." (Doc. 2, p. 23). Although not entirely clear, he seems to allege that his due process rights were violated because he was not given a hearing within fourteen days of his disciplinary tickets being issued and because the Adjustment Committee did not include a mental health staff member. He asserts that a mental health staff member was required to be on the Adjustment Committee since he is designated as having a serious mental illness, SMI.

For a prison disciplinary hearing to satisfy due process requirements, the inmate must be provided: (1) written notice of the charge against the prisoner 24 hours prior to the hearing; (2) the

---

[1] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). *See also Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994) (disciplinary decision must be supported by "some evidence"); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). Haywood does not take issue with any of these requirements, and he does not provide where it is established that the Adjustment Committee is to be composed of a least one mental health staff member when an inmate is designated SMI or that the hearing must be held within fourteen days of the disciplinary ticket being issued. Regardless, neither requirement is constitutional, and a federal court does not enforce state law or regulations. *See James v. Baldwin,* No. 17-cv-623-NJR, 2017 WL 3057609, at *3 (S.D. Ill. July 9, 2017) (citing *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied*, 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001)). Accordingly, Haywood's allegations do no support a due process claim.

Finally, the Court notes that Haywood makes allegations regarding racist conduct on the part of staff at Menard. This conduct, however, is not specifically attributed to any of the Defendants. Thus, to the extent Haywood is attempting to bring an equal protection claim or allege that the Adjustment Committee members were impartial in some way, these allegations are dismissed as insufficiently pled.

### MOTION FOR EMERGENCY HELP

Haywood has filed a motion titled "Motion for Emergency Help." (Doc. 15). In the motion, Haywood asserts that because he was found guilty of a disciplinary ticket without a real hearing, he is being housed in super maximum security facility when he is supposed to be in a medium security facility. "They" are using his guilty determination to keep him in prison longer and block

parole. His mail is being thrown away, and his parole petition sent February 21, 2022, was not timely received by the parole board. Because of the delay, Haywood's parole hearing is not set until August 12, 2023. Haywood also asserts that he is kept in his cell 24 hours a day and cannot go outside because he is "hurting," and there is no doctor to treat him. He claims that Menard staff use racial slurs against him. Haywood asks the Court to allow his two cases that have been severed to proceed together and to recruit him counsel.

The purpose of a preliminary injunction is to preserve the status quo until the merits of a case may be resolved. *Indiana Civ. Liberties Union v. O'Bannon*, 259 F.3d 766, 770 (7th Cir. 2001). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997). A plaintiff must show four elements for an injunction: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm without the injunction; (3) the harm he would suffer is greater than the harm that the preliminary injunction would inflict on the defendants; and (4) the injunction is in the public interest. *Id.*

The Court has found that the Complaint, as currently drafted, fails to state a claim for a due process violation, which makes it impossible for Haywood to prove that he is likely to succeed on the merits. Accordingly, to the extent he is requesting some form of emergency injunctive relief, the motion is denied.

To the extent Haywood is asking the Court to reconsider the severance of his case, the motion is denied. The order severing his case into two was entered in case No. 22-cv-01007-NJR by Chief Judge Rosenstengel, not in *this* case by the undersigned. Thus, the motion is not properly filed in this lawsuit.

### MOTIONS FOR RECRUITMENT OF COUNSEL

The Court also denies Haywood's requests for counsel. (Doc. 4, 15, 16). Pursuant to 28

U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007).

Haywood appears to have made reasonable efforts to obtain counsel on his own and includes letters from eleven different firms declining representation. (Doc. 4). As to his ability to represent himself, Haywood states that he has serious mental illnesses, including severe depression, experiencing delusions, post-traumatic stress disorder, antisocial personality disorder, and impulse control. He also has a learning disability and behavioral disorder, and his mental health conditions continue to worsen during his incarceration. Haywood claims that because he was found guilty of the disciplinary ticket, he cannot move prisons and receive the medical treatment he needs for various illnesses. He states he needs an attorney so that he can move to a different prison and receive medical treatment from the hospital that was treating him prior to his transfer to Menard.

Despite these issues, the Court will not recruit counsel to represent Haywood at this time. Given the early stage of the litigation and that Haywood has failed to state a claim for a due process violation, it is difficult to accurately evaluate the need for counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel…cannot be gauged."); *Watts v. Kidman,* 42 F. 4th 755, 761 (7th Cir. 2022) ( a court may consider the strength of a prose litigant's case when deciding whether to recruit counsel). Based on his filings, Haywood is able to communicate with the Court and relay information. The Court finds him capable of amending his Complaint, which requires only "a short and plain statement of the claim showing that [he] is entitled to relief." FED. R. CIV. P. 8(a)(2). The

Court also notes that although Haywood believes all his claims are connected, this case only has to do with is due process allegations against three defendants. Haywood is proceeding on his medical claims in case No. 22-cv-01007-NJR, and he has been recruited counsel to represent him in that matter. Accordingly, his request for court recruited counsel are denied.

### MOTIONS FOR STATUS AND MOTION TO CLARIFY

In light of this Order, the motion to clarify (Doc. 9) and the motions for status (Doc. 13, 14, 15, and 16) are **DENIED as moot.**

### DISPOSITION

For the reasons set forth above, Count 1 and the entire Complaint (Doc. 2) are **DISMISSED without prejudice** for failure to state a claim for relief. Haywood is **GRANTED** leave to file a "First Amended Complaint" on or before **December 6, 2022.** Should Haywood fail to file a First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to state a claim, failure to comply with a court order, and/or for failure to prosecute his claims. FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2).

It is strongly recommended that Haywood use the civil rights complaint form designed for use in this District. He should label the form, "First Amended Complaint," and he should use the case number for this action (No. 22-cv-01219-SPM). To enable him to comply with this Order, the **CLERK** is **DIRECTED** to mail Haywood blank civil rights complaint form.

An amended complaint generally supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The First Amended Complaint must stand on its own without reference to any previous pleading. Haywood must re-file any exhibits he wishes the Court to consider. The First

Amended Complaint is also subject to review pursuant to 28 U.S.C. § 1915A.

The requests for recruitment of counsel are **DENIED.** (Doc. 4, 15, 16). The motion for emergency help is **DENIED.** (Doc. 15). The motions to clarify and for status are **DENIED as moot.** (Doc. 9, 13, 14, 15, 16).

Finally, Haywood is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   November 8, 2022**

                                                       *s/Stephen P. McGlynn*
                                                       **STEPHEN P. MCGLYNN**
                                                       **United States District Judge**