IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DONALD HAYWOOD,** <br><br> **Plaintiff,** <br><br> v. <br><br> **ANTHONY B. JONES,** <br> **JOSHUA SCHOENBECK,** <br> **MS. WALKER,** <br> **BUETTNER,** <br> **DR. POTEI,** <br> **MABREY,** <br> **DRAPPER,** <br> **STILLHORN,** <br> **ROWLAND,** <br> **HOOD,** <br> **ANTHONY WILLS,** <br> **CARRI MORRIS,** <br> **DR. MELVIN HINTON,** <br> **WEXFORD HEALTH SOURCE, and** <br> **JOSHUA MEADE,** <br><br> **Defendants.** | **Case No. 22-cv-01219-SPM** |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Donald Haywood filed this civil action pursuant to 42 U.S.C. § 1983 while an inmate in the Illinois Department of Corrections ("IDOC") for violations of his constitutional rights that occurred while at Menard Correctional Center. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. See 28 U.S.C. § 1915A(b).

#### FIRST AMENDED COMPLAINT

Plaintiff alleges that on September 9, 2021, he was involved in a staff assault at Pontiac Correctional Center. (Doc. 20, p. 19). That same day, he was transferred to Menard Correctional Center ("Menard") and issued two disciplinary tickets for the incident. (*Id.* at p. 9, 20). Upon his arrival at Menard, he was placed in a cell with only his jumpsuit and a mattress. Plaintiff repeatedly asked staff that walked by his cell for help. He was told by the gallery officer he was "pinked tagged." (*Id.* at p. 21).

The next day, Plaintiff spoke to Counselor Hood. (Doc. 20, p. 21). Plaintiff told her that he did not have any bedding and was not being fed. Hood told him that she would see about giving him sheets but did not know about providing him food because "what was [he] expecting after beating up a white man?" (*Id.*). Hood told Plaintiff, "We stick together in our community." (*Id.*).

Plaintiff wrote Hood every night. (Doc. 20, p. 21). In one letter, he asked her about an upcoming court date and seeking a disciplinary hearing on his tickets. (*Id.*). Hood told Plaintiff that if a disciplinary hearing is not set, then he "will beat it" because Rule 504 provides that a hearing must be held within fourteen days from when the ticket is issued. (*Id.* at p. 22). Plaintiff also wrote mental health because he had been at Menard for over a week and still had not been seen by a mental health professional. Plaintiff states that the case *Rasho v. Jeffreys* established that when an inmate is transferred to a new prison, then he or she must be seen by mental health within "so many hours." (*Id.*).

On September 21, 2021, Plaintiff asked for a crisis team. (Doc. 20, p. 22). In response to his request, he saw Buettner and told her "everything he was going through." After she left his cell, Plaintiff overheard Buettner speaking with security staff calling him racial slurs and stating that she did not care that he did not "have shit in [his] cell. [He] was going to lern[sic] about how the Blackman suffer when he put his hands on the white man." (*Id.*). Later that night, Plaintiff was

escorted from his cell in preparation for his transfer the following day. Plaintiff left Menard on a court writ on September 22, 2021, and did not return until February 2, 2022. (*Id.* at p. 22-23).

After returning to Menard, a disciplinary hearing was held on February 15, 2022. (Doc. 20, p. 23). Upon his arrival at the hearing, Plaintiff saw that the Adjustment Committee was made up of three security staff members, Schoenbeck, Walker, and Jones. (*Id.*). Plaintiff asked where was mental health? Walker responded, "don't worry about mental health how do you plea on these tickets?" (*Id.* at p. 24). Plaintiff informed the committee of the rule that they only had fourteen days to hear his disciplinary tickets and that time had lapsed. The members disregarded the information he provided.

Plaintiff states that Walker is supposed to be the record keeper and serve the disciplinary tickets and should not be on the Adjustment Committee. (*Id.* at p. 24-25). Schoenbeck is the chairperson, and "Jones is suppose[d] to be there for the Black inmates to make sure they don't be on no racese[sic] things." (*Id.* at p. 25). Jones has told other inmates that he does not have a say on the Adjustment Committee because, "they have two white[s] running the board and he just sign[s] his name." If he says anything, Jones will be removed from the committee. (*Id.*).

Following the hearing, Plaintiff was returned to segregation and placed in a dirty cell. (Doc. 20, p. 10). The cell had feces and blood on the walls, the toilet did not work, and mace had previously been sprayed and not cleaned. Plaintiff was denied cleaning supplies and bed linens. The mattress was filthy, and he was routinely denied showers. (*Id.*).

Plaintiff asserts that he is designated "seriously mentally ill" and that while at Menard, he has been denied mental health treatment. (Doc. 20, p. 13). In retaliation for filing grievances about his lack of care, Buettner, Dr. Potei, Mabrey, Drapper, Morris, Dr. Hinton, and Stillhorn refused to provide Plaintiff with treatment and instead issued him disciplinary reports with falsified statements. (*Id.* at p. 14). As a result of their conduct, Plaintiff was placed in solitary or otherwise

punished.

Based on a review of the First Amended Complaint and Plaintiff's articulation of his claims, the Court designates the following counts:

> **Count 1:** Eighth Amendment claim against Hood for not arranging for Plaintiff to speak with a mental health provider soon after his transfer.
>
> **Count 2:** Eighth Amendment conditions of confinement claim against Defendants for allowing Plaintiff to be placed in a cell on September 9, 2021, with only a jumpsuit and denied food.
>
> **Count 3:** Fourteenth Amendment Due process claim against Jones, Schoenbeck, Walker, Potei, Buettner, Drapper, Rowland, Morris, and Wills for disciplining Plaintiff with six months in segregation without due process.
>
> **Count 4:** Eighth Amendment conditions of confinement claim for placement of Plaintiff in a filthy cell with no cleaning supplies for six months.
>
> **Count 5:** Eighth Amendment deliberate indifference claim against Wexford and mental health defendants for failing to provide Plaintiff adequate mental health treatment at Menard.
>
> **Count 6:** First Amendment claim against Buettner, Potei, Mabrey, Drapper, Morris, Hinton, Stillhorn, Wills, Hood, Meade, and Rowland for retaliating against Plaintiff for filing grievances.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any claim that is mentioned in the First Amended Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under the Twombly[1] pleading standard.**

## Discussion

### Count 1

Prison officials can be held liable if they are aware of an objectively serious risk of harm

---

[1] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

to an inmate and knowingly or recklessly disregard it." *Szopinski v. Koontz*, 832 F. App'x 449, 451 (7th Cir. 2020) (citing *Farmer v. Brennan,* 511 U.S. 825, 846 (1994)).

Plaintiff claims that he should have been seen by a mental health staff member soon after his transfer to Menard pursuant to *Rasho v. Jeffries.* Plaintiff notified his counselor, Hood, but Hood told him it was not "her job to make mental health come talk to [him] about [his] ticket or give [him]any kinda help." (Doc. 20, p. 9). He also reached out to mental health. When Plaintiff requested a crisis team, he was seen later that day by Buettner. (*Id.* at p. 22). These facts, as pled, do not include any details that Plaintiff was at a serious risk of harm and that any of the Defendants, including Hood, ignored that risk. Thus, waiting a week to see a mental health professional does not violate the Eighth Amendment.

To the extent Plaintiff is seeking to enforce the settlement agreement in the class action lawsuit *Rasho v. Walker,* No. 07-1298 (C.D. Ill.) or seek damages because Defendants violated the settlement agreement in *Rasho*, the claim is dismissed without prejudice. Claims pertaining to enforcement of the settlement agreement should be brought in the Central District of Illinois, where that case was litigated. *See Rasho v. Walker,* No. 07-1298, 2018 WL 2392847, at *6 (C.D. Ill. May 25, 2018) (stating that the "Settlement Agreement allows for the Plaintiffs to seek relief from this Court if there is a dispute as to whether or not the Defendants are in substantial compliance."). For these reasons, Count 1 is dismissed.

**Count 2**

Count 2 will proceed against Defendant Hood. Plaintiff claims that he was denied all property and food when he was transferred to Menard. He informed Hood of the situation, and she did not act to ensure he received meals.

Count 2 is dismissed as to the other Defendants. Plaintiff states that he wrote every Defendant listed to "get help but they all refused." (Doc. 20, p. 9). This not enough information

for the Court to plausibly infer that each Defendant had the requisite knowledge that Plaintiff was being held in unconstitutional conditions and then disregarded risks to his health and safety. *See Burks v. Raemisch,* 555 F. 3d 592, 595 (7th Cir. 2009) (a prisoner cannot recover tort damages by generally alleging that anyone with knowledge has harmed him by the conditions of the prison).

### Count 3

For a prison disciplinary hearing to satisfy constitutional due process requirements, the inmate must be provided: (1) written notice of the charge against the prisoner 24 hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). *See also Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994) (disciplinary decision must be supported by "some evidence"); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

The Court will allow Count 3 to proceed in part. Plaintiff states that he was not provided adequate notice of the charges prior to hearing. Based on responses by staff regarding his hearing date, he believed there was no longer an outstanding disciplinary ticket against him when he returned to Menard from his court writ. (Doc. 20, p. 16). He was then taken to his hearing on February 15, 2022, with no notice. Plaintiff also asserts that the members of the Adjustment Committee were impartial. Following the faulty hearing, he was held in segregation for six months in filthy conditions. Thus, Count 3 will proceed against Jones, Schoenbeck, and Walker to the extent Plaintiff claims he was not given adequate notice of the charges and was denied a hearing before impartial decision makers.

Count 3 is dismissed to the extent Plaintiff claims that due process was violated solely because the hearing was not conducted in accordance with IDOC rules. Plaintiff asserts that a

mental health provider was not present at the hearing, which is the responsibility of Dr. Potei, Buettner, Drapper, Rowland, Morris, and Wills. (Doc. 20, p. 26). Additionally, the hearing was not held within fourteen days of the disciplinary tickets being issued, and Walker performed duties not within her job description. None of these acts, however, violate Due Process as required by the Constitution. As previously discussed, (*see* Doc. 17, p. 3), the fact that state law or regulation was violated does not automatically state a claim for a constitutional violation. *See James v. Baldwin,* No. 17-cv-623-NJR, 2017 WL 3057609, at *3 (S.D. Ill. July 9, 2017) (citing *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied*, 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001)). Accordingly, these violations of IDOC rules do not state a due process claim, and Count 3 is dismissed as to Potei, Buettner, Drapper, Rowland, Morris, and Wills.

**Count 4**

Count 4 is dismissed without prejudice, as Plaintiff does not assert that he notified any of the named Defendants regarding the conditions of his cell.

**Counts 5 and 6**

Plaintiff asserts that during his time at Menard, he was denied adequate mental health treatment. (Doc. 20, p. 13-16). In retaliation for filing grievances about his need for mental health care, Defendants have retaliated against him. Specifically, in September 2022, he was placed in segregation for writing a grievance and issued a disciplinary ticket simply for asking for mental health treatment. (*Id.* at p. 14).

The Court finds that these claims are not properly joined in this suit. The Seventh Circuit instructs that unrelated claims against different defendants should be severed in to separate lawsuits. *George v. Smith,* 507 F. 3d 605 (7th Cir. 2007). Plaintiff's claims of inadequate mental health care during the entirety of his stay at Menard and ongoing retaliation by mental health

providers are not related to the conditions of confinement and due process claims against Defendants Hood, Jones, Schoenbeck, and Walker, which occurred within months of his arrival at Menard. Therefore, Defendants Wexford, Potei, Buettner, Mabrey, Drapper, Morris, Hinton, Stillhorn, Wills, Hood, Meade, and Rowland are an improperly joined parties. *See* FED. R. CIV. P. 20(a)(2). Rule 21 of the Federal Rules of Civil Procedure grants district courts broad discretion when deciding whether to sever claims or to dismiss improperly joined defendants. *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011). The Court will exercise its discretion and dismiss without prejudice Counts 5 and 6 as improperly joined.

### REQUEST FOR COUNSEL

Plaintiff requests the Court to recruit counsel to represent him so that he can "get all the staff names," and to be given help due to his mental health issues. (Doc. 20, p. 18). The request is **DENIED.** Currently, an attorney is not needed to further identify any of the Defendants. The Court will conduct service on Plaintiff's behalf and will allow Plaintiff to engage in limited discovery if a Defendant is not properly named and further identification is needed. Furthermore, at this early stage, Plaintiff has demonstrated he can represent himself. He can communicate with the Court, file motions, and meet deadlines. Plaintiff may refile his motion, if he continues to have difficulties once discovery on the merits has commenced.

### DISPOSITION

For the reasons set forth above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNT 2** will proceed against Hood and is **DISMISSED without prejudice** as to the other defendants. **COUNT 3** will proceed *in part* against Jones, Schoenbeck, and Walker and is **DISMISSED without prejudice** as to Potei, Buettner, Drapper, Rowland, Morris, and Wills. Plaintiff's allegations that due process was violated solely for failure to follow state law or regulation in relation to the disciplinary hearing held on February 15, 2022, are

**DISMISSED with prejudice** (*See* Count 3)*.* **COUNTS 1** and **4** are **DISMISSED without prejudice** for failure to state a claim. **COUNTS 5** and **6** are **DISMISSED without prejudice** as improperly joined in this action. Because there are no remaining claims against Buettner, Potei, Mabrey, Drapper, Stillhorn, Rowland, Wills, Morris, Hinton, Wexford, and Meade, the Clerk of Court is **DIRECTED** to terminate them as defendants.

The Clerk of Court **SHALL** prepare for Hood, Jones, Schoenbeck, and Walker the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to each defendants' place of employment. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants should respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   October 10, 2023**

                                                    *s/Stephen P. McGlynn*
                                                  **STEPHEN P. MCGLYNN**
                                                  **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.